IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JESSE PEREZ, | ) |
| Plaintiff, | ) |
| vs. | ) No. 2:16-cv-3677-DCN |
| | ) **ORDER** |
| CITY OF CHARLESTON, | ) |
| JOSEPH R. OWENS, and ERIC S. LIGHT, | ) |
| Defendants. | ) |

The following matter is before the court on plaintiff Jesse Perez's ("Perez") motion challenging defendants' peremptory strikes during jury selection, ECF No. 69. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

This matter arises out of Perez's arrest by two police officers, defendants Joseph R. Owens ("Owens") and Eric S. Light ("Light"). On November 15, 2004, Perez was a passenger on his friend's moped when the two were signaled to stop by officers Light and Owens. Perez and his friend did not pull over immediately but eventually stopped at Light's and Owens's behest. Perez alleges that Light and Owens were immediately aggressive during the stop, kneeing him in the back, throwing him to the ground, and otherwise using excessive force during the arrest.

Perez brought this matter in the Court of Common Pleas for the Ninth Judicial Circuit on October 17, 2016, alleging various federal and state claims against the City of Charleston, Owens, Light (collectively, "defendants"), the City of Charleston Police Department, and Gregory Mullen. ECF No. 1-1. Defendants removed the action to

1

federal court on November 18, 2016, ECF No. 1, where the matter was assigned to Magistrate Judge Bristow Marchant. After considering defendants' motion for summary judgment, the Magistrate Judge issued a report and recommendation. ECF No. 53. Upon de novo review, this court affirmed the report and recommendation of the Magistrate Judge, dismissing plaintiff's claims against Gregory Mullen and City of Charleston Police Department. ECF No. 55. Accordingly, Gregory Mullen and City of Charleston Police Department were dismissed from the case. After resolution of the defendants' motions for summary judgment, Perez's remaining claims are: a § 1983 claim for excessive force against Owens and Light, and a South Carolina Torts Claims Act claim against City of Charleston. Trial is scheduled to begin on November 12, 2019.

On September 17, 2019, the court held jury selection proceedings. During the proceedings, defendants used three of their four peremptory strikes on African-American potential jurors. Perez identifies as Hispanic. Perez filed the instant motion challenging the defendants' use of their peremptory strikes on September 24, 2019. ECF No. 69. On October 8, 2019, defendants responded to the motion but failed to provide a race-neutral explanation for their strikes. The court made a preliminary finding that defendants' strikes constituted a pattern of strikes against members of a particular race sufficient to establish a prima facie showing of discrimination under Baston v. Kentucky, 476 U.S. 79 (1986) and ordered defendants to submit supplemental briefing on their non-discriminatory justifications for their strikes. ECF No. 72. Defendants submitted said supplemental briefing on October 23, 2019. ECF No. 73. The court held a hearing on the motion on October 25, 2019. Thus, this matter is now ripe for the court's review.

## II. STANDARD

In Baston v. Kentucky, the Supreme Court held that the striking of potential jurors motivated by a discriminatory purpose violates the Equal Protection clause of the Fourteenth Amendment. 476 U.S. at 96. To establish a prima facie case of a Batson violation, the movant must first establish a prima facie case of discrimination "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose," United States v. Barnette, 644 F.3d 192, 203 (4th Cir. 2011), including whether there has been a pattern of strikes against members of a particular race, Baston, 476 U.S. at 96–97. The movant must establish a prima facie case through a three-part test:

> (1) the movant is a member of a distinct racial group; (2) the non-movant has used the challenges to remove from the venire members of the movant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the non-movant discriminated in his other selection of the jury pool.

Barnette, 644 F.3d at 203 (citing United States v. Barnette (Barnette II), 390 F.3d 775, 794 (4th Cir. 2004) cert. granted, judgment vacated, 546 U.S. 803 (2005)). The Supreme Court has since expanded Batson to allow parties of races different than the excused jurors to have standing to raise Batson challenges. Keel v. French, 162 F.3d 263, 271 (4th Cir. 1998) (citing Powers v. Ohio, 499 U.S. 400, 415 (1991) ("To bar petitioner's claim because his race differs from that of the excluded jurors would be to condone the arbitrary exclusion of citizens from the duty, honor, and privilege of jury service.")).

Once the movant establishes a prima facie case of discrimination, the burden of proof shifts to the non-movant to "provide a non-discriminatory reason for the [non-movant's] use of the peremptory challenge." Id. at 203–04 (citing Barnette II, 390 F.3d at 794). After the non-movant provides race-neutral justifications for the strikes, the court must determine "whether the movant has proved intentional discrimination," in

3

light of "all of the circumstances that bear upon the issue of racial animosity." Id. at 204 (citing Miller–El v. Dretke, 545 U.S. 231, 252 (2005); Johnson v. California, 545 U.S. 162, 168 (2005)). Although Batson was a criminal case, the same approach applies in the civil context. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 631 (1991).

### III. DISCUSSION

Of the twenty potential jurors randomly selected from the jury pool, four were African American. Defendants used their first three preemptory strikes to eliminate three of these four African-American potential jurors. The court finds that defendants' use of the first three of their four peremptory strikes on African-American potential jurors constitutes a pattern of discrimination such that Perez has established a prima facie Batson violation. Therefore, the court will turn to Batson's second and third steps and consider defendants' race-neutral explanation for their strikes and whether the strikes were motivated by discrimination. The court finds that defendants have sufficiently "articulated a neutral explanation related to the particular case to be tried" for each of the peremptory strikes in question to overcome Perez's Batson challenge. The court addresses each of the three strikes in turn.

"[T]he rule in Batson provides an opportunity to the [non-movant] to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." Dretke, 545 U.S. at 251 (citing Batson, 476 U.S. at 96–97).

> "It is true that peremptories are often the subjects of instinct[], and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a [non-movant] simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not

4

hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false."

Id. at 251–52. The trial judge has wide discretion in either accepting or rejecting a non-movant's race and gender-neutral explanation for his or her strikes.

Defendants give the following race-neutral explanation for their peremptory strike of Juror # 3:

> Juror #3 on the Panel Strike List is a female African American from North Charleston, South Carolina. Juror #3 has a sister who works for Disability and Determination Services, a family member who is employed by the Shelley Leake Law Firm, which is a local personal injury law firm and her mother has been a Plaintiff in an employment case. Based on these factors, Defendants believed that Juror #3 would more than likely be sympathetic to Plaintiff's claims of having suffered a personal injury during his arrest. Based on these considerations, as well as the knowledge and experience of defense counsel, Juror #3 was stricken.

ECF No. 73 at 2. The court finds the race-neutral reasons for the strike to be legitimate. Particularly, the court finds that Juror # 3 having a family member who works for a plaintiff-based law firm is a legitimate strategic ground for a peremptory strike. Although Perez argues that the subject action is an excessive force case and not a personal injury case, the court nevertheless understands how a juror who has ties to a personal injury law firm might hold biases in favor of plaintiffs. Therefore, defendants' strike of Juror # 3 was legitimate.

Defendants give the following race-neutral explanation for their preemptory strike of Juror # 12:

> Juror #12 on the Panel Strike List is a female African American from Moncks Corner, South Carolina. Juror #12 is a Certified Nursing Assistant and her mother was a Plaintiff for a work injury. Based on the fact that as a healthcare worker, Juror #12 has likely cared for individuals with back injuries and other trauma (the injuries claimed by Plaintiff in this case) and the fact that Juror #12 disclosed the fact that someone close to her had filed a claim or suit for a personal injury, Defendants believe it is more likely that Juror #12 would be more sympathetic to the Plaintiff's

claims in this trial. Based on these considerations and the knowledge and experience of defense counsel, Juror #12 was stricken.

Id. at 2-3. The court finds the race-neutral reasons for the strike to be legitimate. Juror # 12's occupation as a nursing assistant has likely exposed her to patients with back injuries, the injury Perez alleges in this lawsuit. Perez argues that this proffered reason for the strike of Juror # 12 applies to other similarly situated white jurors who defendants did not strike.[1] As an example, Perez points to Juror #1, a while Surgical Technologist, as a similarly situated juror who defendants did not strike. However, the court understands how a nursing assistant, who cares for patients experiencing personal injury, differs from a surgical technologist, who assists a doctor in surgeries rather than providing general patient care. The same can be said for Perez's comparison to Juror # 4, a medical assistant. Medical assistants primarily work with doctors in patient assessment and evaluation, rather than direct patient care. Perez's other comparisons to seated jurors who do not directly care for injured patients or who have family members in the healthcare field equally fall short of convincing the court that the strike of Juror # 12 was premised on a discriminatory purpose. Therefore, defendants' strike of Juror # 12 was legitimate.

Defendants give the following race-neutral explanation for their preemptory strike of Juror # 13:

> Juror #13 on the Panel Strike List is a female African American from Pinewood, South Carolina. Juror #13 also works in public transportation as a driver for Transdev Services, Inc. She described her duties as "transporting clients to doctor's appointments." Juror #13 has 3 children who are around the same age as the Plaintiff in this case (Plaintiff is 29 years old and Juror #13's children are 21, 30

---

[1] "If a [non-movant's] proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination." Miller-El, 545 U.S. at 241.

> and 35 years old). Based on the fact that Juror #13's employment involves transporting individuals to medical appointments, it was believed that Juror #13 is likely sympathetic to those who have injuries and/or disabilities and Plaintiff is expected to make claims of a personal injury suffered to his back during his arrest in this trial. In addition, it is believed that because Plaintiff is close to the same age as Juror #13's children, she would be more inclined to believe Plaintiff's testimony during the trial and be sympathetic to his claims. Based on these considerations and the knowledge and experience of defense counsel, Juror #13 was stricken.

Id. at 3. The court finds the race-neutral reasons for the strike to be legitimate. Because Juror # 13's employment puts her in constant contact with victims of personal injury, excluding her from an action brought by a plaintiff claiming serious back injuries is legitimate. Perez's comparisons to similarly situated jurors who defendants did not strike fall flat for the same reasons discussed with respect to Juror # 12. Therefore, defendants' strike of Juror # 13 was legitimate.

The court finds that each of defendants' peremptory strikes of African-American potential jurors is supported by legitimate race-neutral reasons. See United States v. DeJesus, 347 F.3d 500, 506–07 (3d Cir. 2003) (finding government's explanation for peremptory strike of "juror's strong religious beliefs [that] would prevent him from rendering judgment" sufficient to overcome Batson challenge); United States v. De la Rosa, 911 F.2d 985, 990–91 (5th Cir. 1990) (upholding a prosecutor's exercise of a peremptory challenge after citing race-neutral reason of church affiliation and potential forgiving nature). Defendants provide logical, strategy-oriented explanations for each of their challenged preemptory strikes. Therefore, the court accepts the defendants' race-neutral explanations for the challenged strikes and dismisses the motion.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES the motion challenging defendants' peremptory strikes during jury selection.

**AND IT IS SO ORDERED.**

          **DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**November 4, 2019
Charleston, South Carolina**